**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| MEDTRONIC, INC., ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 1:15cv946 |
| ) | |
| MICHELLE LEE, ) | |
|     Under Secretary of Commerce for ) | |
|     Intellectual Property and Director ) | |
|     of the United States Patent and ) | |
|     Trademark Office, ) | |
| ) | |
|     Defendant. ) | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Pursuant to Local Rule 7(F)(1), defendant, through her undersigned counsel, hereby respectfully submits the instant reply memorandum of law in further support of her motion to dismiss plaintiff's complaint in the above-captioned action.

**INTRODUCTION**

Once distilled to its essence, the jurisdictional issue presented in the United States Patent and Trademark Office's ("USPTO") motion poses two questions – both of which have been answered by the Federal Circuit.

*First*, does the express language of 35 U.S.C. §§ 314(d) and 324(e) – which provide that the "determination . . . whether to institute an *inter partes* [or a post-grant] review under this section shall be final and nonappealable" sufficiently evince Congress's intent to preclude APA review of such PTAB decisions in the district courts? The Federal Circuit answered that question in Versata Dev. Corp. v. Lee, 793 F.3d 1352 (Fed. Cir. 2015):

> [S]ince the attempt by Versata to obtain judicial review of the PTAB's decision to institute a CBM review in this case was addressed to the PTAB's determinations at the decision to institute stage, the district court was correct in barring judicial review [over Versata's APA claim] pursuant to [§] 324(e).

Id. at 1354.

*Second*, does the PTAB Termination Decision at issue here constitute a "determination[] at the decision to institute stage," and thus fall within the ambit of § 314(d)? The Federal Circuit answered that question in GTNX, Inc. v. INTRRA, Inc., 789 F.3d 1309 (Fed. Cir. 2015):

> Having reconsidered whether to institute the proceeding here and determined not to do so based on § 325(a)(1), the [PTAB] simultaneously "vacated" the institution decisions and required termination of the proceedings. It is strained to describe this as anything but a "determination . . . whether to institute" proceedings – statutory language that is not limited to an initial determination to the exclusion of a determination on reconsideration.

Id. at 1312.

Plaintiff's arguments ask this Court to ignore these two binding decisions. At bottom, plaintiff maintains that this Court operates on a blank slate merely because no *single* Federal Circuit decision has yet addressed whether APA review could be had over a PTAB decision to reconsider its previous institution decision and ultimately terminate proceedings. Far to the contrary, this Court must consider Versata and GTNX – and their underlying reasoning – together. And those decisions hold that a PTAB decision to reconsider its previous decision to institute *inter partes* or post-grant proceedings is similarly directed to the decision to institute stage of proceedings and is encompassed within the statutory language of §§ 314(d) and 324(e), which precludes this Court from exercising jurisdiction over an APA challenge to that decision.

This Court should therefore dismiss plaintiff's complaint for a lack of jurisdiction.

# ARGUMENT

## I. FEDERAL CIRCUIT PRECEDENT PRECLUDES THIS COURT FROM EXERCISING JURISDICTION OVER PLAINTIFF'S APA ACTION

In its opening memorandum, the USPTO argued that Congress precluded plaintiff's instant APA action through 35 U.S.C. § 314(d), which provides that "the determination . . . whether to institute an *inter partes* review under this section shall be final and nonappealable." Mem. (Dkt. No. 13), at 16-18. More importantly, however, the USPTO explained that this conclusion was compelled by a series of recent Federal Circuit holdings concerning the breadth of § 314(d) (and its identical sibling for purposes of post-grant review, § 324(e)) – both for purposes of direct appeal to the Federal Circuit and collateral APA review in a district court. Id. at 17-18; 21-23 (citing, e.g., Versata Dev. Corp. v. Lee, 793 F.3d 1352 (Fed. Cir. 2015); GTNX, Inc. v. INTTRA, Inc., 789 F.3d 1309 (Fed. Cir. 2015)).

Plaintiff ultimately fails to grapple with this binding decisional authority, reasoning – in large part – that these decisions are inapplicable here simply because each individual decision concerns a somewhat different set of circumstances. But as stated below, the Federal Circuit's *reasoning* in each of these cases is unequivocally applicable to plaintiff's instant APA challenge to the PTAB's Termination Decision. In the end, the jurisdictional question posed by the instant motion is thus refreshingly simple, and has already been answered by the Federal Circuit. This Court should reject plaintiff's attempt to obfuscate the obvious.

### A. THE FEDERAL CIRCUIT HAS HELD that the EXPRESS PROVISIONS OF THE AIA PRECLUDE AN APA CHALLENGE TO A PTAB DECISION that FALLS WITHIN THE AMBIT OF SECTION 314(d)

For purposes of 5 U.S.C. § 701(a)(1), Congress can preclude APA judicial review of a specific agency decision either through the *express* provisions of "a particular statute," or through "inferences of intent drawn from the statutory scheme as a whole." Block v. Comm.

Nut. Inst., 467 U.S. 340, 345 (1984). First and foremost, as the Federal Circuit has now held, the express provisions of the AIA – namely, 35 U.S.C. §§ 314(d) and 324(e) – preclude this Court's exercise of jurisdiction over an APA action that seeks to challenge a PTAB determination at the decision to institute stage of proceedings.

1.  In Versata Dev. Corp. v. Lee, 793 F.3d 1352 (Fed. Cir. 2015), the Federal Circuit – affirming this Court's ruling that it lacked jurisdiction over a civil action seeking APA review of a PTAB decision – held as follows:

> [S]ince the attempt by Versata to obtain judicial review of the PTAB's decision to institute a CBM review in this case was addressed to the PTAB's determinations at the decision to institute stage, the district court was correct in barring judicial review [over Versata's APA claim] pursuant to [§] 324(e).

Id. at 1354. As the Federal Circuit has recently confirmed, Versata thus stands for the proposition that where an APA claim seeks to challenge a PTAB decision that falls within the ambit of § 314(d) or § 324(e) – *e.g.*, it is a "determination . . . whether to institute *inter partes* review," 35 U.S.C. § 314(d) – those provisions *preclude* this Court from exercising jurisdiction over that APA claim. See Achates Reference Pub'g, Inc. v. Apple, Inc., -- F.3d --, 2015 WL 5711943, at *4 (Fed. Cir. Sept. 30, 2015) ("This court has rejected the availability of mandamus and APA relief for interlocutory review of the Director's initiation decisions in IPR and CBMR because of the absence of any final written decision of the [PTAB] for this court to review, *and because of the restriction in § 314(d)*." (emphasis added)). Put simply, if applicable, § 314(d) and § 324(e) preclude judicial review of a PTAB decision not only through a direct appeal to the Federal Circuit, but also collaterally through an APA action filed in this Court.

Plaintiff does not seem to quibble with this explication of the Federal Circuit's holding in Versata; indeed, only once within the four corners of its opposition memorandum (in a footnote)

does plaintiff even cite to the *Federal Circuit's* opinion in Versata.[1] Opp. Mem. (Dkt. No. 15), at 22 n.11. Plaintiff nevertheless asks this Court to ignore this precedent because, in its view, Versata dealt with a "different factual scenario" than that which animates its instant APA action. Id. at 13-14.[2] More specifically, plaintiff argues that Versata concerned APA review of an *initial* institution decision by the PTAB, whereas here, plaintiff seeks review of the PTAB's Termination Decision (through which the PTAB reconsidered and ultimately vacated its initial institution decision).[3] Id. at 14. This difference, according to plaintiff, renders Versata inapposite.

But this distinction is without any jurisdictional significance. Indeed, the existence of this factual difference only means that Versata *alone* is not dispositive of the jurisdictional question posed here. Nor has the USPTO asserted that position. Rather, as the USPTO argued in its opening memorandum, Mem., at 21-22, any putative "gap" between Versata and the Termination Decision at issue in the instant action was unequivocally bridged by *another* binding Federal Circuit decision issued before Versata – GTNX.

---

[1]To the contrary, plaintiff's discussion of Versata is limited only to *this Court's* opinion, and the Federal Circuit's decision in a "second" Versata case: Versata's direct appeal from the PTAB's "final written decision" on patentability. Opp. Mem., at 13-14 (citing Versata Dev. Grp., Inc. v. SAP Am., Inc., 793 F.3d 1306 (Fed. Cir. 2015)).

[2]Plaintiff also maintains that Versata is inapposite because there – unlike here – Versata was ultimately able to secure judicial review of the underlying CBM issue through a direct appeal to the Federal Circuit from the PTAB's "final written decision" on patentability. Plaintiff's inability to secure judicial review, as discussed in far greater detail below, see infra pp. 9-11, does not allow plaintiff to ignore the explicit statutory language found in § 314(d).

[3]Plaintiff's opposition memorandum confirms that the PTAB's Termination Decision is the sole focus of its instant APA action. Opp. Mem., at 8 ("Medtronic seeks review under the APA, based on allegations that the PTAB's Termination Decision suffered from numerous errors.").

2.  In <u>GTNX, Inc. v. INTTRA, Inc.</u>, 789 F.3d 1309 (Fed. Cir. 2015), the Federal Circuit held that a PTAB decision to terminate proceedings after reconsidering its initial institution decision constituted a determination "whether to institute" a proceeding for purposes of § 314(d) and § 324(e):

> Having reconsidered whether to institute the proceeding here and determined not to do so based on § 325(a)(1), the [PTAB] simultaneously "vacated" the institution decisions and required termination of the proceedings. It is strained to describe this as anything but a "determination . . . whether to institute" proceedings – statutory language that is not limited to an initial determination to the exclusion of a determination on reconsideration.

<u>Id.</u> at 1312 (citations omitted). Put simply, <u>GTNX</u> stands for the proposition that a PTAB Termination Decision – identical in all relevant aspects to the Termination Decision that forms the basis of plaintiff's APA challenge, see <u>GEA Process Eng'g, Inc. v. Steuben Foods, Inc.</u>, -- Fed. Appx. --, 2015 WL 4076487 (Fed. Cir. June 23, 2015) (non-precedential) – falls within the ambit of § 314(d) and § 324(e)'s *express* bar on judicial review. This, combined with <u>Versata</u>'s holding that an APA challenge directed to a PTAB decision governed by § 314(d) or § 324(e) is precluded, prevents this Court from exercising jurisdiction here.

Despite its recognition that the Federal Circuit in <u>GTNX</u> provided that "reconsidering an institution decision falls under the §314/324 bar," <u>Opp. Mem.</u>, at 17, plaintiff nevertheless attempts to avoid the implications of <u>GTNX</u> for this action. Each of these attempts is meritless. First, plaintiff argues that although "<u>GTNX</u> found that the Federal Circuit lacked appellate jurisdiction under provisions of the AIA, the Court expressly recognized that whether a party could bring an APA challenge to a PTAB ruling like the one at issue in this case was an open question." <u>Opp. Mem.</u>, at 15.[4] Even if true, the Federal Circuit answered that "open question" a

---

[4] Of course, there was no need for the Federal Circuit to decide the availability of APA review in <u>GTNX</u>, which was a direct appeal from the PTAB to the Federal Circuit (a tribunal in which an APA cause of action cannot be brought in the first instance), and in which the adverse party was *not* the USPTO (or any other government entity), which is the sole defendant in an

- 6 -

month later in Versata – holding, as stated above, that APA review is not available to challenge PTAB decisions that fall within the ambit of § 314(d) or § 324(e). See Versata, 793 F.3d at 1354. In short, rather than reading the Federal Circuit's decisions as a cohesive whole, plaintiff asks this Court to consider the Federal Circuit's decisions myopically, as independent factual "islands" divorced from their underlying reasoning.

Second, plaintiff maintains – without any supporting authority – that the Federal Circuit's holding that a Termination Decision constituted a "determination . . . whether to institute [] review" under §§ 314(d) and 324(e) was premised exclusively on the specific procedural posture of that appeal (*i.e.*, a direct appeal from the PTAB), and that its decision might change within the context of an APA claim. Opp. Mem., at 17. Nothing in GTNX even remotely suggests that the Federal Circuit's statutory construction of §§ 314(d) and 324(e) was premised on the nature of the appeal, and as such, plaintiff cannot cite to any language from the decision to support its position. But in any event, plaintiff's position is similarly foreclosed by Versata, in which the Federal Circuit explicitly recognized the applicability of its interpretation of §§ 314(d) and 324(e) "in the context of direct appellate jurisdiction," id. – *including* GTNX – to the question of whether Congress had precluded APA review of PTAB decisions in this Court:

> Subsection 324(e) provides that "[t]he determination [by the PTAB] whether to institute a post-grant review under this section shall be final and nonappealable." Although at the time the district court ruled it did not have the benefit of our views – the decision was made before we had addressed the issue – we recently have acknowledged the statutory limits of judicial review in CBM cases. See VirtualAgility Inc. v. Salesforce.com, Inc., 759 F.3d 1307 (Fed. Cir. 2014); Benefit Funding Sys. LLC v. Advance Am. Cash Advance Ctrs. Inc., 767 F.3d 1383 (Fed. Cir. 2014) (same); *accord* GTNX, Inc. v. INTRRA, Inc., Nos. 15-1349, -1350, -1352, 789 F.3d 1309 (Fed. Cir. June 16, 2015).

---

APA action, see, e.g., Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech., 543 F.3d 657, 664 (Fed. Cir. 2008).

Versata, 793 F.3d at 1354 (emphasis added) (internal case parentheticals omitted).[5] As such, the mere fact that GTNX came before the Federal Circuit as a direct appeal from the PTAB is irrelevant to its actual holding that the type of Termination Decision that plaintiff seeks to challenge here falls within the judicial review bar of § 314(d).

Third, plaintiff maintains that this Court should completely ignore GTNX – a precedential decision of the Federal Circuit – because its conclusion that a PTAB Termination Decision constitutes "a determination . . . whether to institute review" for purposes of §§ 314(d) and 324(e) was mere *dicta*. Opp. Mem., at 17. This position is also without merit. As the Supreme Court has held, "where a decision rests on two or more grounds, none can be relegated

---

[5] Nor, even in the absence of Versata, would the judicial construction of § 314(d) depend on whether a litigant sought judicial review through a direct appeal from the PTAB to the Federal Circuit, or through an APA cause of action in this Court. Opp. Mem., at 15 ("[T]he GTNX panel did not discuss the presumption of reviewability . . . ."); 17. To be sure, in analyzing whether Congress precluded judicial review for purposes of § 701(a)(1), the Supreme Court has noted that there is a "presumption of judicial review." See, e.g., Sackett v. EPA, 132 S. Ct. 1367, 1372-73 (2012). Initially, there is some question whether that presumption applies where Congress has *expressly* precluded judicial review of a particular decision. See FDIC v. Bank of Coushatta, 930 F.2d 1122, 1127 (5th Cir. 1991) (holding that "in that absence of an express prohibition, there is a 'strong presumption that Congress did not mean to prohibit all judicial review of [the] decision'" (quoting Dunlop v. Bachowski, 421 U.S. 560, 567 (1975), overruled in part on other grounds by Local No. 82 v. Crowley, 467 U.S. 526, 549 n.22 (1984)). Indeed, the Sackett Court itself distinguished between *express* and *implied* preclusion of APA review under § 701(a)(1):

> Nothing in the Clean Water Act *expressly* precludes judicial review under the APA or otherwise. But in determining "[w]hether and to what extent a particular statute precludes judicial review," we do not look "only [to] its express language." The APA, we have said, creates a "presumption favoring judicial review of administrative action," but as with most presumptions, this one "may be overcome by *inferences of intent* drawn from the statutory scheme as a whole."

Sackett, 132 S. Ct. at 1372-73 (quoting Block, 467 U.S. at 345, 349 (emphasis added)) (internal citations omitted). But in any event, as this Court explicitly held in Versata, despite the "presumption of reviewability," §§ 314(d) and 324(e)'s "final and nonappealable" language was sufficient to rebut the presumption and preclude APA judicial review. See Versata Dev. Grp., Inc. v. Rea, 959 F. Supp. 2d 912, 919 (E.D. Va. 2013), aff'd, 793 F.3d 1352 (Fed. Cir. 2015); see also infra pp. 9-11 (discussing the "presumption of reviewability").

to the category of *obiter dicta*." Woods v. Interstate Realty Co., 337 U.S. 535, 537 (1949); see also United States v. Wright, 496 F.3d 371, 375 n.10 (5th Cir. 2007) (holding that it is "well-settled that alternate holding are binding, they are not dicta"). Lest there be any doubt about the application of this principle to GTNX's interpretation of §§ 314(d) and 324(e), the Federal Circuit has itself laid it to rest. In Versata, the Federal Circuit – in another precedential decision – cited GTNX as providing the court's views on the "statutory limits of *judicial review* of decisions to institute." Versata, 793 F.3d at 1354 (emphasis added). And in GEA Systems, the panel classified the Federal Circuit's decision in GTNX as follows:

> The GTNX court *held* that in addition to the fact that there was no "final written decision," the [PTAB's] decision could fairly be characterized as a "determination . . . whether to institute under 35 U.S.C. § 324(e) and thus "final and nonappealable."

GEA Systems, 2015 WL 4076487, at *2 (emphasis added). The Federal Circuit's construction of §§ 314(d) and 324(e) to include PTAB Termination Decisions – such as that which plaintiff seeks to challenge here – is thus not *dicta*.

3. Throughout its opposition, plaintiff also attempts to avoid the jurisdictional conclusion that is compelled by Versata and GTNX by decrying the fact that unless it can pursue an APA claim in this Court, it will be without an avenue for judicial review of the PTAB's Termination Decision. Opp. Mem., at 17 (maintaining that the USPTO's "argument would turn both the APA and the presumption of reviewability on their heads" because plaintiff "will be left without any option for Article III judicial review"). But as the statutory structure of the APA evinces, and several courts have recognized, the mere fact that a litigant is left without an opportunity for Article III judicial review is not sufficient to ignore Congress's intent to preclude APA review.[6]

---

[6] Although not an alternate avenue for review of the PTAB's Termination Decision, it does bear mentioning in this context that plaintiff is not altogether without an opportunity to obtain judicial review of the ultimate issue driving its request for *inter partes* review proceedings – *i.e.*, the validity of Bosch's patents. *Inter partes* review, it must be remembered, is merely an

Initially, the very structure of the APA itself recognizes that there are instances in which Congress will have precluded APA review without leaving an alternative option for Article III judicial review of a particular agency decision. Put somewhat simply, the statute provides – in two *separate sections* – that a Court may not engage in judicial review if, *inter alia*, "statutes preclude judicial review," 5 U.S.C. § 701(a)(1), or there is another "adequate remedy in a court," id. § 704. As this Court's decision in Versata makes clear, these are separate and independent bases on which a district court may be prevented from exercising jurisdiction over an APA action. See Versata Dev. Corp. v. Rea, 959 F. Supp. 2d 912, 923, 927 (E.D. Va. 2013), aff'd on other grounds, 973 F.3d 1352 (Fed. Cir. 2015); see also Sackett, 132 S. Ct. at 1374 ("We conclude that that the compliance order in this case is final agency action for which there is no adequate remedy other than APA review, *and* that the Clean Water Act does not preclude that review." (emphasis added)). Indeed, the Federal Circuit itself has recently held APA review precluded in circumstances in which a litigant was left without any opportunity for Article III judicial review of a particular USPTO decision. See Exela Pharma Sciences, LLC v. Rea, 781 F.3d 1349, 1352-53 (Fed. Cir. 2015) (holding APA review of a USPTO decision to revive a patent application precluded by § 701(a)(1)).

Nor is the "presumption of reviewability" nearly as sacrosanct as plaintiff would have it; indeed, it certainly does not *mandate* some avenue for Article III judicial review of all agency actions. As stated earlier, there is some question as to whether the presumption even applies in those instances, as here, in which Congress has expressly precluded judicial review over a particular decision. See supra n.5. But in any event, as the Supreme Court has held, even if

---

*optional* mechanism for review of patentability. Regardless of this Court's decision here, plaintiff will be entitled to obtain Article III judicial review of whether Bosch's asserted patents are in fact valid as a part of the infringement litigation in the Northern District of California.

applicable, the presumption of APA reviewability can be *rebutted* – whether as a result of express statutory language or by *implication* from other indicia of congressional intent.[7] See Sackett, 132 S. Ct. at 1373. For all the reasons stated above, Congress sufficiently revealed its intent to preclude APA review of PTAB determinations at the decision to institute stage (including the Termination Decision here) through the express language of §§ 314(d) and 324(e) so as to rebut any putatively-applicable presumption of reviewability.

This is the clear upshot of Judge Payne's decision in Dominion Dealer Solutions, LLC v. Lee, 2014 WL 1572061 (E.D. Va. Apr. 18, 2014), which plaintiff largely ignores. In Dominion Dealer, an entity sought to challenge – pursuant to the APA in district court – a PTAB decision not to institute inter partes proceedings. See id. at *1. Recognizing that the "wording" of § 314(d) was "quite clear," Judge Payne held that the presumption of reviewability had been rebutted, notwithstanding the fact that APA review would have served as the entity's only opportunity for Article III review of the PTAB's decision. Id. at *4. As such, the mere fact that plaintiff is without an alternative avenue for Article III judicial review cannot itself justify ignoring clear and explicit statutory language, and the application of binding Federal Circuit authority construing the same.

### B.   OTHER INDICIA WITHIN THE AIA SIMILARLY IMPLY CONGRESS'S INTENT TO PRECLUDE APA REVIEW OF THE PTAB'S TERMINATION DECISION

In its opening memorandum, the USPTO explained that even if the explicit language of

---

[7]This gives the lie to plaintiff's additional position – *i.e.*, that "when a statutory scheme affords a party no means for review," the APA *must* provide an avenue for judicial review, because otherwise, that statutory scheme will have "impliedly repealed" the APA. Opp. Mem., at 18. The Supreme Court has repeatedly held that APA review can be precluded under § 701(a)(1) by *implication*. See Block, 467 U.S. at 349 (holding that in adjudicating whether APA review is precluded by another statute – like the AIA here – courts must review "*inferences of intent* drawn from the statutory scheme as a whole" (emphasis added)).

§ 314(d) were somehow insufficient, other aspects of the AIA (including its structure and purpose) demonstrated the necessary congressional intent to preclude APA review of the PTAB's Termination Decision. Mem., at 18-20. This position was one of this Court's alternative holdings in Versata[8]:

> Given the clear and undisputed indication that Congress passed the AIA with the goal of efficiency and streamlining of post-grant patent reexamination, the presumption toward judicial review is overcome here. Finding jurisdiction in the instant case would sanction a parallel court proceeding under the APA against express congressional intent made evident by the AIA's passage.

Versata, 959 F. Supp. 2d at 922-23. Plaintiff, through its opposition memorandum, asks this Court to reconsider the specific findings it made about the AIA in reaching this conclusion. Opp. Mem., at 19-22. In the interest of judicial economy, the USPTO will not re-argue what this Court already decided, and thus respectfully refers this Court to its previous decision in Versata.

      **C.    THE "NARROW EXCEPTION" TO SECTION 314(d) RECOGNIZED IN *ACHATES* DOES NOT APPLY HERE**

Perhaps recognizing that Federal Circuit precedent has already foreclosed its position here, plaintiff now attempts to avail itself of "an implicit and narrow exception" to the jurisdictional bar of § 314(d) – one to which the Federal Circuit referred less than a month ago – for USPTO errors that are obviously "egregious." See Achates, 2015 WL 5711943, at *7. Plaintiff misconceives the extraordinarily limited nature of any such exception. More fundamentally, however, not only does the plain language of the AIA preclude any argument that the USPTO "egregious[ly]" ran afoul of an explicit statutory provision, the Federal Circuit has already held that the same arguments that animate plaintiff's position here are not the types of clear and unequivocal errors necessary to trigger any such exception.

---

[8] Of note, the Federal Circuit – holding that the express language of § 324(e) precluded APA review – did not address this Court's alternative holding.

At the threshold, it is very difficult to overstate the narrow nature of this possible "exception," and the extraordinarily-limited instances in which it may apply. See, e.g., Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel, 437 F.3d 1256, 1263 (D.C. Cir. 2006) (holding that the applicability of the exception is "extraordinary" and "extremely narrow in scope"). As the Federal Circuit described it, "'even when the statutory language bars judicial review, courts have recognized that an implicit and narrow exception to the bar of judicial review exists for claims that the agency exceeded the scope of its delegated authority or violated a clear statutory mandate.'" Id. (quoting Hanauer v. Reich, 82 F.3d 1304, 1307 (4th Cir. 1996)). But the Federal Circuit made clear that the exception could apply "[o]nly" to "egregious error[s]," id., which, as other courts have highlighted, occurs "only in [the] very narrow situation in which there is a 'plain' violation of an *unambiguous and mandatory* provision of the statute," Am. Airlines, Inc. v. Herman, 176 F.3d 283, 293 (5th Cir. 1999) (emphasis added)). Importantly, "a dispute over whether an agency charged with a statute's implementation has interpreted it correctly . . . is not the sort of 'egregious' error" necessary to trigger any such exception. See id. There thus can be little doubt that plaintiff faces a daunting task in attempting to fit its complaints about the PTAB's statutory interpretation into this line of cases.

Plaintiff identifies two putative PTAB "errors" in the Termination Decision, neither of which come close to the type of "egregious" ignorance of a clear and unequivocal statutory mandate that could even arguably avoid the judicial review bar of § 314(d). First, plaintiff maintains that the PTAB committed an "egregious" error in electing to reconsider its initial institution decision. Opp. Mem., at 23. But, in the very same paper, plaintiff also acknowledges that the Federal Circuit has already held – in no uncertain terms – that "'nothing in the statute or regulations applicable here [] *clearly deprives* the [PTAB] of [the] default authority'" to

reconsider its own decision. Id. at 25-26 (emphasis in original) (quoting GTNX, 789 F.3d at 1311); see also GTNX, 789 F.3d at 1313 (noting that, "as a general matter, administrative agencies possess inherent authority to reconsider their decisions" (internal quotation marks omitted)). Even accepting plaintiff's incorrect argument that the Federal Circuit's statement only applied to a mandamus analysis, see infra Part II, if this putative statutory violation was not sufficiently "clear" and "indisputable" to warrant mandamus relief, it cannot be sufficiently "clear" to warrant application of the Achates exception. See Jordan Hosp. v. Leavitt, 571 F. Supp. 2d 108, 117-19 (D.D.C. 2008) (recognizing similarity between "clear and indisputable" standard for mandamus and that applicable to the "exception" to bars on judicial review).

Second, plaintiff decries the test that the PTAB articulated for determining which entities are real parties-in-interest to a particular *inter partes* review proceeding. Opp. Mem., at 23-24. And although plaintiff asserts that this challenge "fall[s] comfortably within the Achates exception," id., it does not cite a single statutory provision that the PTAB's "test" violated, let alone explain how this unspoken violation was "clear" and "egregious." There is good reason for plaintiff's omission, as Congress did not provide any definition for the term "real party-in-interest" within any provision of the AIA; rather, Congress simply provided – without definition – that a petition for *inter partes* review must identify "all real parties in interest." 35 U.S.C. § 312(a)(2). If there is no statutory provision that defines "real party-in-interest" for purposes of *inter partes* review, it is simply impossible for the PTAB's test to have egregiously run afoul of a "clear" statutory mandate as necessary to trigger the Achates exception.

II. **THE FEDERAL CIRCUIT HAS HELD THAT THE PTAB HAS THE AUTHORITY TO RECONSIDER ITS OWN INSTITUTION DECISIONS**

In the event that this Court concluded that it could exercise jurisdiction over plaintiff's instant request for APA review of the PTAB's Termination Decision, the USPTO also argued

that a single count of plaintiff's complaint was foreclosed by Federal Circuit precedent, and thus subject to dismissal pursuant to Federal Rule 12(b)(6). Mem., at 24-25. More specifically, in Count IV of its complaint, plaintiff maintains that the PTAB lacked the authority to reconsider its decision to institute *inter partes* review proceedings, and issue the Termination Decision. Complaint, ¶¶64-65. The USPTO's position on this score was simple and narrow – regardless of the underlying merits of plaintiff's statutory position, that position was foreclosed by the Federal Circuit's decision in GTNX. Mem., at 25.[9]

Plaintiff presents two arguments in opposition to the USPTO's reasoning, neither of which carries the day. First, plaintiff maintains that the Federal Circuit only held that the PTAB possessed the authority to reconsider its prior institution decision within the context of the heightened standard applicable only to mandamus petitions – which requires a "clear and indisputable right" to relief. Opp. Mem., at 25-26. But plaintiff far understates the nature of the Federal Circuit's discussion of the PTAB's reconsideration authority, which was far more definitive than a mere bald statement that the litigant in question could not meet its significant mandamus burden. Far to the contrary, the Federal Circuit provided as follows:

> GTNX identifies *nothing* in the statute or regulations that precludes the Board from reconsidering an initial institution decision . . . . Moreover, *as a general matter*, "administrative agencies possess inherent authority to reconsider their decision, subject to certain limitations, *regardless of whether they possess explicit statutory authority to do so.*"

GTNX, 789 F.3d at 1312-13 (quoting Tokyo Kikai Seisakusho, Ltd. v. United States, 529 F.3d 1352, 1360 (Fed. Cir. 2008) (emphasis added)); see also GEA Process, 2015 WL 4076487, at *2. These statements – *e.g.*, that there is *nothing* in the statute or regulations to prevent the PTAB

---

[9]As a result, plaintiff's discussion of the underlying merits of its statutory position, Opp. Mem., at 24-25, is simply not relevant to the limited nature of the USPTO's motion to dismiss Count IV for failure to state a claim. If this Court were to allow the action to proceed despite the USPTO's instant motion, and the Federal Circuit's decision in GTNX, the USPTO will address plaintiff's statutory position in future briefing.

from acting in this fashion – are far more definitive about the PTAB's authority to reconsider its own institution decisions than plaintiff would have this Court believe. Because GTNX held – consistent with both its prior precedent and that of other courts of appeal – that the PTAB, like other administrative tribunals, possesses the inherent authority to reconsider its prior decisions, this Court should independently dismiss Count IV of plaintiff's complaint.

Plaintiff also argues that Count IV of its complaint states a plausible claim for APA relief because even if the PTAB had the authority to reconsider its institution decision, it cannot do so in an arbitrary and capricious fashion. Opp. Mem., at 26-27. Initially, plaintiff fails to recognize that Count IV of its complaint *only* avers that the PTAB lacked the authority *vel non* to issue the Termination Decision because it cannot reconsider its institution decisions, Complaint, ¶¶64-65, and it is well-settled that one cannot amend its complaint through motions briefing. See, e.g., Zahair, Ltd. v. Driggs, 965 F. Supp. 741, 748 n.4 (D. Md. 1997), aff'd, 141 F.3d 1162 (4th Cir. 1998) (per curiam). But more importantly, this "interpretation" of Count IV – *i.e.*, that the Termination Decision was "arbitrary and capricious" – renders it identical to the *other* counts of plaintiff's complaint; thus, it is duplicative and subject to dismissal. See Coffee v. Office of Juvenile Justice, 2014 WL 3616164, at *1 n.1 (E.D. Va. July 21, 2014).

## CONCLUSION

For the foregoing reasons, and those articulated within the USPTO's opening memorandum, this Court should dismiss plaintiff's complaint in the above-captioned action.

///

///

                                              Respectfully submitted,

                                              DANA J. BOENTE
                                              UNITED STATES ATTORNEY

                          By:         _____/s/_____
                                              DENNIS C. BARGHAAN, JR.
                                              Assistant U.S. Attorney
                                              2100 Jamieson Avenue
                                              Alexandria, Virginia 22314
                                              Telephone: (703) 299-3891
                                              Fax:       (703) 299-3983
                                              Email:  dennis.barghaan@usdoj.gov

DATE: October 16, 2015                      ATTORNEYS FOR DEFENDANT

OF COUNSEL:       Frances Lynch
                           Meredith Schoenfeld
                           Associate Solicitors
                           United States Patent & Trademark Office

...

## CERTIFICATE OF SERVICE

      I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will transmit a true and correct copy of the same to the following:

Gregory Hayes Lantier
Wilmer Cutler Pickering Hale & Dorr LLP (DC)
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006

Date: October 16, 2015       _____/s/_____
      DENNIS C. BARGHAAN, JR.
      Assistant U.S. Attorney
      2100 Jamieson Avenue
      Alexandria, Virginia 22314
      Telephone: (703) 299-3891
      Fax:      (703) 299-3983
      Email: dennis.barghaan@usdoj.gov

      ATTORNEYS FOR DEFENDANT