IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

MEDTRONIC, INC.,                        )
                                        )
    Plaintiff,                      )
                                        )
v.                                      )        Case No. 1:1-15-cv-946
                                        )
MICHELLE LEE,                           )
                                        )
    Defendant.                      )
                                        )
                                        )

## MEMORANDUM OPINION & ORDER

THIS MATTER is before the Court on Defendant Michelle Lee's Motion to Dismiss for Lack of Subject-Matter Jurisdiction (Doc. 11) and Motion to Dismiss Count IV for Failure to State a Claim (Doc. 12). This case arises from the Patent and Trademark Board's ("PTAB") decision to terminate an *inter partes* review of United States Patent Numbers 7,769,605 ("the '605 patent") and 7,870,249 ("the '249 patent").

Plaintiff brings this action to appeal the PTAB's decision, asserting that the Administrative Procedure Act ("APA") grants this Court jurisdiction to review Plaintiff's appeal. Defendant, in response, brings this Motion to Dismiss for Lack of Subject-Matter Jurisdiction, asserting primarily that § 314(d) of the recently enacted America Invents Act ("AIA"), precludes judicial review of the PTAB's decision. This case turns on the interpretation of the AIA and how it intersects with the APA.

There are four issues before the Court. The first issue is whether Congress, through the AIA, precluded APA judicial review of PTAB determinations of "whether to institute" *inter partes* review proceedings over previously issued patents. This Court holds that, through the

express language and intricate scheme of the AIA, Congress has precluded judicial review of PTAB determinations of "whether to institute" *inter partes* review of previously issued patents.

The second issue is whether the PTAB's decision to terminate an already-instituted *inter partes* review, constitutes a decision on "whether to institute" *inter partes* review, and is thus final and nonappealable. This Court holds that the PTAB's decision to terminate a previously instituted review proceeding constitutes a decision of "whether to institute" *inter partes* review because the decision to terminate nevertheless requires the PTAB make a determination of whether an *inter partes* review. Thus, when the PTAB makes a determination of whether to institute *inter partes* review—whether at the outset of a request for *inter partes* review or after having previously instituted the *inter partes* review—this constitutes a decision on "whether to institute" *inter partes* review for the purposes of the AIA and therefore is final and non-appealable.

The third issue is whether Plaintiff's position, as statutorily precluded from appealing to the Federal Circuit and having no alternative remedy for judicial review of the PTAB's decision to terminate *inter partes* review, is sufficient to confer jurisdiction on this Court under the APA. The Court holds that, though the APA confers a general cause of action to obtain judicial review of an agency action when no other adequate remedy exists, this allocation applies only when a statutory provision does not explicitly preclude such judicial review. Here, because the AIA explicitly precludes judicial review of PTAB determinations of "whether to institute" *inter partes* review through express language, its revised statutory scheme, and recent case law, the APA does not grant this Court with jurisdiction to review Plaintiff's appeal of the PTAB's decision.

Finally, the fourth issue is whether Plaintiff's challenge to the PTAB's *standard* for determining what constitutes a Real Party in Interest or the PTAB's application of that standard,

is different from a challenge of the PTAB's decision on whether to institute *inter partes* review, and therefore permits this Court jurisdiction to review Plaintiff's appeal. The Court holds that the AIA's preclusive language governing the PTAB's decision on whether to institute *inter partes* review applies to the decision as whole, including the PTAB standard and its application; again, precluding this Court from exercising jurisdiction over Plaintiff's claim.

## I.   BACKGROUND

This case began as a patent infringement dispute between Cardiocom, LLC ("Cardiocom")—Plaintiff's subsidiary—and Robert Bosch Healthcare Systems, Inc. ("Bosch") regarding the '605 and '249 patents. (Doc. 13, Mem. in Supp. of Def. Mtn. to Dismiss for Lack of Juris. at 8-9). On April 26, 2013, Bosch filed a complaint in the United States District Court for the Eastern District of Texas against Cardiocom, asserting that Cardiocom had infringed six of Bosch's patents, including the '605 and '249 patents. *Id.* at 9. While this action was pending, Cardiocom sought to have the United States Patent and Trademark Office ("USPTO") conduct an administrative review of the patents Bosch alleged Cardiocom had infringed. *Id.* In July 2013, Cardiocom filed its first petition requesting that the USPTO institute *inter partes* review of the '605 and '249 patents. *Id.* at 10. However, one month later in August 2013, Medtronic, Inc., the Plaintiff in this action, purchased Cardiocom, making Cardiocom its wholly-owned subsidiary. *Id.*

On December 30, 2013, while its *inter partes* review petitions were still pending, Cardiocom attempted to add Plaintiff Medtronic as a Real Party in Interest ("RPI") to its proceeding. (Doc. 13-1, Exhibit A, Cardiocom's Notice of Real Party in Interest). However, on January 16, 2014, the Patent and Trademark Board ("PTAB") determined not to institute *inter partes* review of the '605 and '249 patents. (Doc. 13-1, Exhibit B, USPTO's Decision Denying

Institution of *Inter Partes* Review).  In spite of this, in March and April 2014, Plaintiff, *without* its subsidiary Cardiocom, filed new petitions seeking institution of *inter partes* review of the very same patents. (Doc. 13-1, Exhibit C, Medtronic's Petition for *Inter Partes* Review at 1). Plaintiff was listed as the *only* RPI in the new petitions.  *Id*.  In response, Bosch opposed the institution of *inter partes* review and argued that Cardiocom was *also* an RPI and as such, should have been included in Plaintiff's petition. (Doc. 13-1, Exhibit D, Patent Owner's Mtn. for Addt'l Discovery from Pet. Medtronic, Inc. at 1).

Nevertheless, in a decision issued on September 11, 2014, the PTAB decided to institute *inter partes* review of the '605 and '249 patents. (Doc. 13 at 10).  With respect to the RPI issue, the PTAB concluded that Bosch had not provided a sufficient factual basis upon which to conclude, based on the current record, that Cardiocom was an RPI to Plaintiff's petition for *inter partes* reviews of the '605 and '249 patents.  *Id*. at 9.  Thus, the *inter partes* review proceedings continued.  *Id*. at 10.  In spite of this, Bosch filed a motion with the PTAB requesting the ability to obtain further discovery from Plaintiff regarding the RPI issue. (Doc. 13-1, Exhibit D).  The PTAB agreed, "in the interest of justice." *Id*. at 4.  After Plaintiff provided discovery, Bosch moved the PTAB to *rescind* its decision to institute *inter partes* proceedings and terminate the pending review proceedings. (Doc. 13-1, Exhibit F, Patent Owner's Mtn. to Terminate).

Drawing on the proceedings in the U.S. District Court for the Northern District of California, Bosch asserted that Cardiocom, while arguing that the district court should stay the pending litigation, labeled *itself* as the RPI, by stating that *it* was the party that had requested *inter partes* review of the '605 and '249 patents.  Memo in Supp. of Def. Mtn. to Dismiss at 9. Bosch additionally argued that Cardiocom's payment and control of the *inter partes* review petitions, submitted by Plaintiff, further demonstrated that Cardiocom is a RPI to Plainitff's

petitions and as such, should have been included in Plaintiff's petitions for *inter partes* review. *Id.* at 5-8.

The parties fully briefed the issue of whether Cardiocom was an RPI to Plaintiff's petitions, and on March 16, 2015, the PTAB determined that Cardiocom *was* an RPI to the proceeding and as such, should have been named in Plaintiff's petition as a RPI. (Compl., Ex. 1 PTAB's Decision on Patent Owner's Motion to Terminate). Specifically, the PTAB noted that when Plaintiff filed its petitions for the institution of *inter partes* review, its only interest in a finding of unpatentability "came solely from its ownership of Cardiocom." *Id.* at 10. The PTAB also cited the fact that Cardiocom, prior to its ownership by Plaintiff, had filed petitions for *inter partes* review on the same patents. *Id.* at 11-12. Additionally, the PTAB noted that Cardiocom had informed the Northern District of California that it "believed itself to be an RPI for purposes of" those *inter partes* review proceedings. *Id.* at 12. In light of this, the PTAB terminated Plaintiff's pending *inter partes* review proceedings of the '605 and '249 patents. *Id.* at 9.

Plaintiff then brought this case, appealing the PTAB's decision to terminate the instituted *inter partes* proceedings. (Doc. 1). In response, Defendant brings this Motion to Dismiss for Lack of Subject-Matter Jurisdiction. (Doc. 11). Defendant's motion rests primarily on the interpretation of the Congress's latest statute detailing the PTAB's decision to reexamine issued patents. *See* Doc. 13. Specifically, Defendant's Motion to Dismiss for Lack of Subject-Matter Jurisdiction turns on the interpretation of § 314(d) of the recently enacted America Invents Act ("AIA"), its language precluding judicial review of certain PTAB decisions, and its intersection with the APA.

**The Leahy-Smith America Invents Act**

In 2011, Congress sought to, for the third time, alter the statutory scheme of patent reexaminations to provide a more streamlined process. *See* H.R. Rpt. 112-98, at 45 (2011). This new process was meant to allow the PTAB to fully resolve petitions for patent reexamination, resulting in fewer cases in the district courts. *Id.* To do so, Congress created the Leahy-Smith America Invents Act, Pub. L. No. 112-29, §18. The AIA details two distinct procedures for patent owners and challengers to obtain reexamination of patents that were already issued: (1) *inter partes* review and (2) post-grant review. The proceedings for *inter partes* review are codified in 35 U.S.C. §§ 312-19 (2013); similarly, the procedures for post-grant review are codified in 35 U.S.C. §§ 321-29 (2013).

Reflecting Congress' unified intention to streamline both processes, *inter partes* review and post-grant are nearly identical in their purposes and procedural requirements, differing only in minute areas, such as the time restraints of each respective procedure. *See generally id.* §§ 312-19, 321-29. Both review proceedings are conducted entirely by the PTAB alone, §§ 316(c) and 326(c); both proceedings require a petition seeking to institute review proceedings which identifies all RPIs, § 312(a)(2) and 37 C.F.R. § 42.8(b)(1); 35 U.S.C. § 322(a)(2); both procedures specifically state that the PTAB's decision of whether to institute the requested review proceedings is final and nonappealable, §§ 314(d) and 324(e); and finally, both procedures provide for appellate review, at the Federal Circuit, only after the PTAB has issued a "final written decision" "with respect to the *patentability*" of the reviewed patents, at the conclusion of the review process, §§ 314(d), 318(a), regarding *inter partes* review; *see also id.* §§ 328(a), 329, regarding post-grant review; *id.* §141(c) (describing the appellate posture for both *inter partes* and post-grant review).

6

On the contrary, the two procedures have only minimal differences, focusing primarily on the more limited nature of the *inter partes* review process than its post-grant counterpart. 35 U.S.C. § 311(c). For example, a person seeking to institute *inter partes* review may only do so *after* the initial nine-month period from patent issuance, or after the termination of post-grant review proceedings. *Id.* In contrast, one seeking to institute *post-grant* review may do so anytime within the first nine months after the patent is initially issued. *Id.* at § 321(c). Aside from these minimal differences relating to timing, it is clear that together, the *inter partes* and post-grant review procedures—codified in Chapter 31 and 32 of Title 35, respectively—almost identically, illustrate the AIA's detailed scheme for reexamination proceedings of previously issued patents.

## II.   STANDARDS OF REVIEW

### 12(b)(1) Standard of Review

Federal Rule of Civil Procedure 12(b)(1) enables a party to move for dismissal by challenging a court's jurisdiction over a subject matter. Fed. R. Civ. P. 12(b)(1); *see also Coulter v. United States*, 256 F. Supp. 2d 484, 486 n.3 (E.D. Va. 2003), *aff'd* 90 Fed. App'x 60 (4th Cir. 2004). A court must dismiss a case where the court finds subject matter jurisdiction lacking. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *Jones v. Calvert Grp.*, Ltd., 551 F.3d 297, 301 (4th Cir. 2009) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).

In deciding a motion made pursuant to Federal Rule of Civil Procedure 12(b)(1), the court must ascertain whether "plaintiff's allegations standing alone and taken as true plead jurisdiction and a meritorious cause of action." *Allianz Insurance Co. of Canada v. Cho Yang Shipping Co., Ltd.,* 131 F. Supp. 2d 787, 789 (E.D. Va. 2000) (quoting *Dickey v. Greene,* 729 F.2d 957, 958 (4th Cir.1984)).

A plaintiff bears the burden of proof for establishing that federal subject matter jurisdiction is proper. *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 371 (4th Cir. 2012) (citing U.S. *ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009)). A defendant may assert that the complaint fails to allege facts upon which federal subject matter jurisdiction could be based. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). In this scenario, a court must assume the veracity of claims by the plaintiff. *Id.* (quoting *Bain*, 697 F.2d at 1219).

Alternatively, a defendant may assert that federal subject matter jurisdiction does not exist notwithstanding any specific allegations in the complaint. *Id.* When this occurs, a court may consider evidence outside the pleadings in order to determine whether subject matter jurisdiction exists. *Id.; Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004). Accordingly, the plaintiff's allegations will not receive a blanket presumption of truth, and a dispute of material fact will not prevent a court from evaluating the claims underlying jurisdiction. *Vuyyuyu*, 555 F. 3d at 347.

### 12(b)(6) Standard of Review

Federal Rule of Civil Procedure 12(b)(6) enables a defendant to move for dismissal by challenging the sufficiency of the plaintiff's complaint. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion should be granted where a plaintiff has failed to "state a plausible claim for relief" under Rule 8(a). *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (quoting *Ashcroft v. Iq*bal, 556 U.S. 662, 679 (2009)) (internal quotation marks omitted). To be facially plausible, a claim must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clatterbuck v. City of*

*Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

In order to survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations, taken as true, "to raise a right to relief above the speculative level" and "nudg[e] [the] claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)) (internal quotation marks omitted). The requirement for plausibility does not mandate a showing of probability but merely that there is more than a mere possibility of the defendant's unlawful acts. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). As a result, a complaint must contain more than "naked assertions" and "unadorned conclusory allegations" and requires some "factual enhancement" in order to be sufficient. *Id.* (citing *Iqbal*, 556 U.S. at 678 and *Twombly*, 550 U.S. at 557).

In considering a Rule 12(b)(6) motion, a court must give all reasonable inferences to the plaintiff and accept all factual allegations as true. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). A court should also consider documents beyond the complaint including any "documents incorporated into the complaint by reference." *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 176 (4th Cir. 2009) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

A court is not bound to accept as true any bare legal conclusions, whether contained in the complaint or the incorporated documents. *Burnette v. Fahey*, 687 F.3d 171, 180 (4th Cir. 2012) (citing *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011)). The court's 12(b)(6) review involves separating factual allegations from legal conclusions, and a court must grant a 12(b)(6) motion where a complaint fails to provide sufficient non-conclusory factual allegations

to allow the court to draw the reasonable inference of the defendant's liability. *See Burnette*, 698 F.3d at 180; *Giacomelli*, 588 F.3d at 196-97 (citing *Iqbal*, 556 U.S. at 678-79 and *Gooden v. Howard Cnty., Md.*, 954 F.2d 960, 969-70 (4th Cir. 1992) (en banc)).

## III.   ANALYSIS

The Court GRANTS Defendant's Motion to Dismiss for Lack of Subject-Matter Jurisdiction pursuant to 12(b)(1) and DENIES Defendant's Motion to Dismiss Count IV of Plaintiff's Complaint pursuant to 12(b)(6), as moot.

### 1.   This Court Does Not Have Jurisdiction Under the APA to Review PTAB Decisions of "Whether to Institute" Review Proceedings.

This Court holds, in agreement with its prior ruling and as affirmed by the Federal Circuit, that it lacks jurisdiction to review the PTAB's decision to terminate *inter partes* review of the '605 and '249 patents. *See Versata Dev. Corp. v. Rea*, 959 F. Supp. 2d 912 (E.D. Va. 2013) (Lee, J.), *aff'd*, 793 F.3d 1352 (Fed. Cir. 2015).

Plaintiff brings its Complaint and Opposition to Defendant's Motion to Dismiss for Lack of Subject-Matter Jurisdiction by invoking the APA. *See* Doc. 15, Pl. Opp., at 10; *see also* 5 U.S.C. §§ 702 and 704 (judicial review for "final agency action for which there is no other adequate remedy in a court"). Citing § 704 the APA, Plaintiff correctly notes that the APA evinces the "strong presumption" that Congress intended judicial review of final agency actions. *See Dominion Dealer Solutions, LLC v. Lee*, 2014 WL 1572061, *2, *3 (E.D. Va. Apr. 18, 2014) (citing *Pregis Corp. v. Kappos*, 700 F.3d 1348, 1358 (Fed. Cir. 2012)). Plaintiff further notes that Congress rarely intends to prevent courts from enforcing its directives to federal agencies; therefore, to rebut the presumption of judicial review, a statute's language or structure must demonstrate that Congress wanted an agency to police its own conduct. Pl. Opp. at 11 (citing *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1651 (2015)).

Plaintiff argues that §704's illustrated cause of action gives plaintiffs who have no other remedy an action to challenge an agency's final action. However, Plaintiff misses two key limitations to this statute. First, the APA is not a jurisdiction-conferring statute. *GTNX, Inc. v. INTRA, Inc.*, 789 F.3d 1309, 1313 (Fed. Cir. 2015); *see also Lee v. Citizenship and Immigration Services*, 592 F.3d 612, 619 (4th Cir. 2010). Instead, "the jurisdictional source for an action under the APA is the 'federal question' statute, which confers jurisdiction on federal courts to review agency action." *Dominion*, 2014 WL 1572061 at *2. Second, and most importantly, any general grant of judicial review the APA sets forth is subject to specific statutory limitations that "have the potential to effectively strip the federal courts of jurisdiction and provide valid grounds for a Rule 12(b)(1) motion." *Id.* (quoting *Wade v. Blue*, 36 F.3d 407, 411 n. 2 (4th Cir. 2004); *Pregis Corp. v. Kappos*, 700 F.3d 1348, 1356 (Fed. Cir. 2012) (noting that the APA contains various "limitations on the grant of judicial review").

The Supreme Court noted in *Block v. Community Nutrition Institute*, that the presumption of judicial reviewability is rebutted "whenever the congressional intent to preclude judicial review is 'fairly discernible' in the statutory scheme." 467 U.S. 340, 345 (1984). In other words, congressional intent to preclude judicial review of administrative action can be overcome by the specific language of a statute, legislative history, or inferences of congressional intent drawn from the statutory scheme as a whole. *See Dominion*, 2014 WL 1572061 at *3. Therefore, while it is true that §704 of the APA supports the "strong presumption of judicial review" from agency actions, the Supreme Court has made it clear that Congressional intent otherwise could easily rebut such a presumption.

In addition to clear case law stating that agency challenges under the APA can be limited by a statute, the APA *itself* notes, in its very first sentence, that its provisions apply "*except to the*

*extent that . . . (1) [a] statute[] preclude[s] judicial review*; or (2) agency action is committed to agency discretion by law." 5 U.S.C § 701(a) (2011). The Supreme Court, reviewing this section of the APA acknowledged that a separate statute could preclude judicial review in spite of APA's provisions supporting the presumption of judicial review. *Block*, 467 U.S. at 345 (noting that under §702 "[t]he APA confers a general cause of action upon persons "adversely affected or aggrieved by agency action" but under 701(a)(1) "withdraws that cause of action to the extent the relevant statute preclude[s] judicial review") (citations omitted).

The Supreme Court then further described how a separate statute could preclude judicial review, stating:

> Whether and to what extent a particular statute precludes judicial review is determined not only from its express language but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved.

*Id. at* 345. In other words, where congressional intent is "'fairly discernable,' APA review is not available." *Id.* at 351.

Here, § 314 of the AIA—which governs the institution of *inter partes* review—makes Congress' intent to preclude judicial review of PTAB decisions on whether to institute review proceedings, more than fairly discernible. *See* 35 U.S.C. § 314 (2011). Applying *Block*, this Court uses two primary ways to ascertain Congress' intent regarding judicial review of PTAB determinations of whether to institute reexamination proceedings, in light of the APA. First, § 314's express language mandates finality of all PTAB determinations of whether to institute *inter partes* review by precluding appeals from such decisions. *See* § 314(d). Second, the AIA's intricate scheme—which details precisely when judicial review is allowed and in what manner it should be obtained—also prohibits judicial review of PTAB decisions of whether to institute *inter partes* review proceedings. *See Versata*, 959 F. Supp. 2d 912, *aff'd*, 793 F.3d 1352 (Fed.

Cir. 2015); *GTNX*, 789 F.3d at 1309. When combined, both factors make it undoubtedly clear that Congress intended to rebut the presumption of judicial reviewability the APA assigns and through the AIA, preclude district courts from exercising jurisdiction over APA challenges on the PTAB's determination of whether to institute *inter partes* review.

> *a.     The Express Language of § 314(d) of the AIA Clearly Expresses Congress's Intent to Preclude Judicial Review and Rebut the APA's Presumption Of Reviewability.*

Section 314(d), titled "No Appeal," states: "[t]he determination by the Director[1] whether to institute an *inter partes* review under this section shall be final and nonappealable." 35 U.S.C. § 314(d) (2011). As this Court has already established, "[t]hat wording is quite clear." *Dominion*, 2014 WL 1572061 at *3. The statute, by mandating in plain language that the PTAB's determinations are "final and nonappealable, unambiguously precludes appeals or reviews of the PTAB's decision of whether to institute *inter partes* review.

In *Versata Dev. Corp. v. Rea,* similar to the case at hand, a plaintiff brought an action requesting this Court to review, under the APA, the PTAB's decision of whether to institute post-grant review.[2] 959 F. Supp. 2d 912 (E.D. Va. 2013) *aff'd* sub nom. *Versata Dev. Grp., Inc.*

---

[1] It is uncontested that for both § 314(d) and § 324(e) the Director of the USPTO has delegated her authority to the PTAB, thereby placing the authority to determine whether to institute review proceedings solely in the hands of the PTAB. Thus, it was the *PTAB* in this case who decided the institution and termination of the *inter partes* review at issue.

[2] Given the AIA's simultaneously created and almost identical processes for *inter partes* review §314 and post-grant review §324, the PTAB's decision on whether to institute post-grant review and whether to institute *inter partes* review invoke the same questions of law. *See GTNX,* 789 F.3d at 1311 (using *St. Jude's* statutory interpretation of 35 U.S.C. § 314(d), regarding *inter partes* review, to interpret 35 U.S.C. § 324(e), regarding post grant review ("[i]n *St. Jude . . .* we dismissed an appeal from a non-institution decision under chapter 31 of Title 35, which establishes a regime for "*inter partes review*" of issued patents *that is materially the same as chapter 32 in the particular jurisdictional respects relevant here.*")); *see also GEA Process Eng'g, Inc. v. Steuben Foods, Inc.*, 618 F. App'x 667, 669 (Fed. Cir. 2015) ("Although this case involves *inter partes* review under chapter 31, rather than post-grant review under chapter 32, the analysis is the same.").

*v. Lee*, 793 F.3d 1352 (Fed. Cir. 2015).  Specifically, in *Versata*'s underlying action, the PTAB decided to institute reexamination proceedings and the plaintiff, dissatisfied, sought review of that decision in this Court.  *Id.*  Citing the *language* of the statute itself—language identical to the language of §314(d)[3]—and finding that "the ordinary reading of the statute prevails," this Court concluded "the express language of the statute indicates Congress's intent to preclude judicial review of a PTAB decision to institute post-grant proceedings."  *Id.* at 919, 921. Accordingly, the Court held that it "lack[ed] subject matter jurisdiction over Plaintiff's claim . . . because the AIA expressly precluded [it]."  *Id.* at 918-19.

Like *Versata*, this Court again reads the phrase "final and nonappealable" in the ordinary sense as precluding Plaintiff from appealing or having review of the PTAB's decisicion of whether to institute *inter partes* review.  That the plaintiffs in *Versata* sought review of a PTAB decision to *institute* review proceedings and Plaintiff here seeks review of just the opposite—the PTAB's decision to *not* conduct *inter partes* review of Plaintiff's patents—is of no matter.  Both cases seek to appeal the PTAB's decision of whether reexamination proceedings are merited. Thus, under this plain reading this Court again, lacks jurisdiction to review the PTAB's decision. This interpretation of the AIA's preclusion could not be clearer.

> *b. The Detailed Scheme of the AIA Also Demonstrates Congress's Intent to Preclude Judicial Review of PTAB Determinations of Whether to Institute Reexamination Proceedings.*

Even if the AIA's express language was not so clear, Congress's creation of the AIA's intricate and detailed scheme also evinces its intent to preclude judicial review of PTAB decisions of whether to institute *inter partes* review proceedings. The detailed scheme of Title

---

[3] 35 U.S.C. §314(d) is identical to §324(e), with both provisions stating that "[t]he determination by the Director whether to institute an *inter partes* review (or, "a post grant review") under this section shall be final and nonappealable."

35, encompassing both Chapter 31 and 32, provides a procedure for both types of reexamination procedures (*inter partes* review under Chapter 31 and post-grant review under Chapter 32). Each chapter outlines how plaintiffs can petition for reexamination either through *inter partes* or post-grant review (§ 312 and § 322), what responses can be filed in response to the petitions, (§ 313 and § 323), the timelines in which responses are required (§ 313 and § 323), Congress's intent regarding other proceedings or actions (§ 315 and § 325), conduct of post-grant review (§ 326), termination of the review in the event of settlement (§ 317 and § 327), PTAB actions related to the final decision (§ 318 and § 328), and the right to appeal post-grant review (§ 329)). *See generally* 35 U.S.C., Chapter 31 and 32; *see also Versata*, 959 F. Supp. 2d at 919-20. This meticulous attention to the procedural details shows that Congress was deliberate in its creation of the procedural posture of AIA as a whole, encompassing both the *inter partes* and post-grant proceedings.

More importantly, however, §314 *itself* is intricate. Focusing on the *inter partes* review specifically, § 314 is, consistent with its post-grant counterpart, equally thorough. Subsection (a) places the decision of whether to institute an *inter partes* review at the sole discretion of the Director, but describes the threshold requirements that must be met before the Director can decide to institute *inter partes* review. *See* 35 U.S.C § 314 (2011). Subsections (b) and (c) describe the timing and notice requirements of the decision and most importantly, subsection (d) discusses the appealability of such decision. *Id.*

This attention to detail at every crucial level indicates that when Congress enacted the AIA it had a very specific procedural process in mind. With a scheme accounting for even the most minute details, Congress still elected to provide one sole avenue for judicial review of the PTAB's actions during the entire *inter partes* proceeding—an appeal to the Federal Circuit from

the PTAB's ultimate patentability determination. *See* 35 U.S.C. §§ 319 and 141(c) (2011) (authorizing appeals only from a "final written decision of the [Board] under section 318(a)); 35 U.S.C. § 318(a) (2011) (referring to "a final written decision *with respect to the patentability of any patent claim challenged by the petitioner and any new claim added under section 316(d))*" (emphasis added); *see also GEA Process Eng'g, Inc. v. Steuben Foods, Inc.*, 2015 WL 4076487, at *1 (Fed. Cir. June 23, 2015).

Section 318(a)'s specification that the possibility of appeal hinges on a "final written decision" determining the "overall patentability" of the patents at issue can in no way be deemed unintentional. *See* 35 U.S.C. § 318(a) (2011). Instead, it presents an "undisputed indication that Congress passed the AIA with the goal of efficiency and streamlining . . . patent reexamination[s]," and to accomplish this, deliberately foreclosed the possibility of judicial review from the PTAB's reexamination proceedings. *Verata*, 959 F. Supp. 2d at 923; *see also Dominion*, 2014 WL 1572061 at *6 (stating that "Congress intended the AIA and the [*inter partes* review] process to decrease the volume of patent litigation in the federal courts and streamline the patent administration process."). Finally, the fact that the 2011 restructuring of the AIA was Congress's *third* attempt at refining the process whereby petitioners request *inter partes* and post review under the AIA exclusively, shows an attempt to create streamlined process that should not be easily disregarded. *See* 35 U.S.C. § 302 (Congress' creation of an administrative alternative to federal court litigation in 1980 through *ex parte* review); 35 U.S.C. § 306 and H.R. CONF. RPT. 106-464, at 133 (Nov. 9, 1999) (Congress' 1999 attempt to reduce federal litigation through a creation of *inter partes* review); H.R. RPT. 112-98, at 45 (2011) (noting the creation of the AIA's PUB. L. 112-29, 125 Stat. 284 (Sept. 16, 2011) because

Congress' initial creation of the "reexamination" process, over 30 years ago, had not served as the efficient alternative to federal court litigation due to its limitations).

The *Dominion* court further showed how § 314(d)'s preclusion of judicial review to petitioners seeking to appeal the PTAB's decision of whether to institute proceedings, aligns with the goals of the AIA to create a streamlined process that did not burden district courts. 2014 WL 1572061 at *6. *Dominion* noted, "the sheer number of reviews sought by disappointed petitioners might well undermine the Congressional purpose for its modifications to the review process. It is entirely logical, then, for Congress *to reserve the right of appeal for those petitioners who were able to obtain [inter partes review]*" and receive a final decision on patentability. *Id.* This language, in conjunction with Congress' undoubtedly intentional scheme, shows Congress' intent to preclude judicial review of PTAB decision to institute *inter partes* review, more than fairly discernable. *See Block*, 467 U.S. at 351 ("[The] presumption [favoring judicial review] does not control in cases such as this one . . . since the congressional intent to preclude judicial review is "fairly discernible" in the detail of the legislative scheme.").

Nevertheless, Plaintiff does not acknowledge the strength of either 314(d)'s language or scheme as a clear rebuttal of the presumption of reviewability. Instead, Plaintiff articulates the rebuttable nature of the presumption of reviewability, then immediately begins to apply the three-part test outlined in *Sackett v. E.P.A* to this case. 132 S. Ct. 1367 (2012); *see also* Pl. Opp., at 10-11. However, as Plaintiff even notes itself, *Sackett's* test was only applied because "[t]he Court concluded that *no statute clearly precluded judicial review* and thus a strong presumption of reviewability under §704 [of the APA] applied." Pl. Opp., at 12 (emphasis added). Of course, the glaring distinction between *Sackett* and the case at hand is that here, there *is* statute—§314(d)—whose language and structure evince Congress' intent to preclude judicial review from

specific PTAB decisions.  Thus, the strong presumption of reviewability under the APA is rebutted.  Because of this, there is no need for this Court to apply the *Sackett* three-part test; instead, this Court continues to use the language and structure of §314(d) to ascertain Congress' intent.  Having looked at both and determined that the AIA clearly rebuts the presumption of reviewability under the APA, this Court reaffirms the *Versata* holding that "the AIA evinces clear congressional intent to preclude actions that seek judicial intervention under the APA for reexamination proceedings."  *Versata*, 959 F. Supp. 2d. at 919.  Accordingly, this Court lacks jurisdiction over Plaintiff's appeal from the PTAB's decision to terminate *inter partes* review.

## 2.  The PTAB's Decision to Terminate a Previously-Instituted *Inter Partes* Proceeding Constitutes a Decision of "Whether to Institute" *Inter Partes* Review

The PTAB's decision to terminate *inter partes* review constitutes a determination of "whether to institute" *inter partes* review.  Through its recent cases, the Federal Circuit has, by interpreting the statutory requirement of finality and nonappealiblity of PTAB determinations of whether to institute, demonstrated that PTAB decisions to *terminate* review proceedings are equivalent to PTAB decisions of whether to *institute* review proceedings.

First, in *GTNX*, the PTAB decided to institute post-grant review proceedings; however, after realizing that the decision was erroneous given statutory limitations, the PTAB terminated the proceeding. 789 F.3d at 1311.  More precisely, in *GTNX*, approximately four months after having instituted the review proceeding of the plaintiff's patent, the PTAB realized that the statute, which detailed when a petitioner could have its patents reexamined, when applied to the plaintiffs, actually *precluded* the plaintiff from having its patent reexamined. *See id.*  Upon realizing its error, the PTAB quickly terminated the review proceedings and vacated its August 2014 initial decision to institute the review proceedings. *Id.* at 1312 ("Having reconsidered

whether to institute the proceeding here and determined not to do so based on § 325(a)(1), the Board simultaneously "vacated" the institution decisions and required termination of the proceedings.") (citing *GTNX*, 2014 WL 7723800, at *1, *3). The PTAB's decision to terminate the previously-instituted review proceedings never addressed the issues of patentability. *Id.*

The Federal Circuit evaluated the PTAB's decision to terminate proceedings and addressed the issue of whether §324(e)'s language—mandating PTAB determinations of "whether to institute" review proceedings be final and nonappealable—encompass the PTAB's decision to *terminate* proceedings as well. *Id.* at 1311-1312. Contrasting the PTAB's decision to terminate an instituted review proceeding with a final decision determining patentability, the *GTNX* court concluded that, for purposes of the AIA, the PTAB's decision to *terminate* its already-instituted proceedings *constituted a determination of "whether to institute." See id.* ("Confirming that the decision at issue is not a § 328(a) decision—the only appealable decision within the statutory regime—is that the fair characterization of the decision within the regime is as a decision whether to institute proceedings.").

Citing *St. Jude Medical, Cardiology Division, Inc. v. Volcano Corp.,* the *GTNX* court noted a distinction between a PTAB's final decision after instituting a review procedure, which is appealable, and the preliminary decision the PTAB makes to determine whether a plaintiff's petition merits review, a decision that is not appealable. *See id.* The court stated that there is a "structural contrast between a 'determination . . . whether to institute' a proceeding, which is 'final and nonappealable,' 35 U.S.C. § 314(d), and the "final written decision" determining patentability, § 318(a). . . ." *Id.* at 1311 (citing *St. Jude*, 749 F.3d 1373, 1375-76 (Fed. Cir. 2015)). The "textually clear and common-sense distinction" between the two—a final Board decision that reaches the patentability merits and an earlier decision whether to institute—limits

appeals of the PTAB's decisions to those decisions "on the merits of the ... review, *after* [the PTAB] '*conducts the proceeding* that [it] has instituted." *Id.* at 1312.

Applying *St. Jude* to the facts at issue in its case, the *GTNX* court noted that similarly, the PTAB had, after already instituting review proceedings, "reconsidered" whether it should have initially instituted review proceedings and "determined not to do so." *Id.* at 1312. Addressing the PTAB's "reconsideration" specifically, the *GTNX* court stated "*[i]t is strained to describe this as anything but a 'determination ... whether to institute' proceedings.*" *Id.* It further noted that the statutory language making all PTAB determinations of whether to institute review proceedings "final and nonappealable" "*is not limited to an initial determination to the exclusion of a determination on reconsideration.*" *Id.* Concluding, the *GTNX* court stated that the statutory declaration that a decision is final and nonappealable "thus reinforce[es] the absence of appeal jurisdiction in this court," given that a PTAB's decision to simply reconsider its earlier decision to institute proceedings, and then vacate that decision, did not constitute a final and appealable decision. *Id.*

Even more on point, in *GEA*, the Federal Circuit encountered a case with facts nearly identical to the case at hand. 2015 WL 4076487, at *1 . There, the PTAB decided to institute *inter partes* review—the same type of review Plaintiffs have requested in this case—on various patents. *Id.* Later, realizing that the petitioner "did not identify all real-parties-in-interest," as required by the AIA, the PTAB terminated the review proceedings it had previously instituted. *Id.* When the petitioner appealed this decision to the Federal Circuit, the court, relying on *GTNX* as instructive, concluded that *it lacked jurisdiction over the petitioner's appeal for review of the PTAB's decision. Id.* Referencing §314(d)'s "final and nonappealble" language, the court held that the statute precluded review of such a case because the PTAB was well within its authority

under § 314(d) to make such a determination. *Id.* at *2. The court explained that the PTAB, having realized that its *initial* decision to institute *inter partes* review was erroneous, simply corrected their initial decision. *Id.* (stating that "administrative agencies possess *inherent authority to reconsider their decisions*, subject to certain limitations, *regardless of whether they possess explicit statutory authority to do so*") (citations omitted) (emphasis added).

The *GEA* court went on to note that the plaintiffs, who argued that PTAB determinations of whether to institute should be "final and nonappealable," and therefore the PTAB's later decision to terminate was erroneous, had "not made *any* showing that would clearly deprive the [PTAB] of that default authority." *Id.* The court held, the termination decision was a decision on "whether to institute" review proceedings under the AIA and was thus, under the sole discretion of the PTAB. *Id.* In other words, the PTAB's decision to terminate *inter partes* review is not appealable because the AIA specifically forbids appeals from PTAB determinations of whether to institute review proceedings; the termination decision falls under that category. *Id.* at *2. As the court further explained, "[t]hat the Board *initially* instituted proceedings here [and subsequently terminated the proceedings] is of no moment." *Id.* at *2.

In this case, like *GTNX* and *GEA*, the decision to terminate the *inter partes* review proceeding was made entirely by the PTAB—the same Board that initially decided to institute review proceedings. (Compl., Ex. A). Also like *GTNX* and *GEA*, the PTAB's decision to terminate proceedings stemmed from its realization that its previous institution of review proceedings was erroneous, according to the threshold requirements of the AIA describes. *See* Compl., Ex. A, PTAB's Decision on Patent Owner's Motion to Terminate at 9 ("After considering all of the evidence of record and the parties' arguments, we are persuaded that

Medtronic is acting as a proxy for Cardiocom, and that Cardiocom should have been named in the Petitions as a real party-in-interest.").

Similar to *GTNX* and *GEA*, the PTAB in this case, after conducting a full hearing, and realizing its error—that Plaintiff had not listed Cardiocom as an RPI, as required by the AIA— corrected its error by terminating the earlier proceeding. *See id.* at 18 ("A petition for *inter partes* review may be considered "only if" it meets certain statutory requirements, including identification of 'all' real parties-in-interest. § 35 U.S.C. 312(a)(2). *Medtronic's Petitions, therefore, are incomplete and cannot be considered.*") (emphasis added). Thus, this Court, looking to *GTNX* and *GEA*, concludes that, as the sole entity tasked with the authority of evaluating petitions for reexamination procedures, the PTAB's actions to *later modify its own decision* are merely an indication of it exercising its authority to determine what petitions should be given review or not. Naturally, such a decision is a part of the PTAB's "inherent authority to reconsider [its] decisions . . . regardless of whether [it] possess[es] explicit statutory authority to do so." *GTNX*, 789 F.3d at 1313 (citations omitted).

Further, the PTAB's termination never addressed the issues of patentability and thus, cannot be interpreted as a final decision. Rather, the "clear and common-sense distinction" between the PTAB's evaluation of whether a reexamination proceeding *should be instituted* and the decision *determining patentability at the end of such an instituted review*, also applies in this case. *See GTNX*, 789 F.3d at 1311 (citing *St. Jude*, 749 F.3d at 1375-76). First, given the relatively short time period of the instituted *inter partes* review, and the PTAB's decision to terminate the review as soon as it concluded that Plaintiff had not complied with the threshold requirement of naming all RPIs in its petition, there can be no doubt the PTAB never reached the merits of patentability. Second, and most indicative of the PTAB's action, is the PTAB's *own*

statement addressing its termination of the *inter partes* review, the PTAB stated that, given Plaintiff's omission of Cardiocom as a RPI, it "vacate[s] the Decisions on Institution and *do not issue final written decisions under § 35 U.S.C. 318(a) with respect to the patentability of the challenged claims*." *See* Compl., Ex. A, PTAB's Decision on Patent Owner's Motion to Terminate at 21 (ordering that the instituted *inter partes* review proceedings are "terminated") (emphasis added). The Board's own admission that its decision terminating inter partes review did not constitute a decision on patentability demonstrates that the decision was not one the AIA allows petitioners to appeal. *See* 35 U.S.C.A. § 318 ("If an *inter partes* review is instituted and not dismissed under this chapter, the Patent Trial and Appeal Board shall issue a final written decision *with respect to the patentability* of any patent claim challenged by the petitioner and any new claim added under section 316(d).") (emphasis added).

Moreover, that the determination at issue here reflects an inquiry the PTAB is required to assess *before* it decides to institute review proceedings. As the applicable precedent demonstrates, because it did not address the issue of patentability, it was not the type of decision Congress granted parties a right to appeal. Instead, the decision here, that Plaintiff did not include the required RPI in its petition for review and therefore cannot have *inter partes* review—mirrors all of the other preliminary decisions the PTAB must make when deciding if a plaintiff's petition actually merits review. Such decisions, as clearly articulated by the statutory scheme and plain language of the statutes, are at the sole discretion to the PTAB. In light of this, this Court concludes that the PTAB's decision to terminate *inter partes* review constituted a determination of whether to institute review proceedings. As such, the decision is final and nonappealable and this Court does not have jurisdiction to review it.

### 3. Plaintiff's Lack of an Alternative Remedy for Article III Review of the PTAB's Decision Does Not Grant This Court Jurisdiction to Review Plaintiff's Appeal.

This Court does not have jurisdiction to review Plaintiff's claim, irrespective of Plaintiff's lack of an alternate remedy. This Court and the Federal Circuit have affirmed this conclusion in *Versata*, which also held that the AIA precludes review of a PTAB decision of whether to institute reexamination proceedings. *See Versata*, 793 F.3d at 1354 ("[t]he district court was correct as a matter of law when it dismissed Versata's suit seeking to set aside the PTAB's decision to institute review of the '350 patent.").

Nevertheless, Plaintiff maintains that *Versata* is inapplicable to the case at hand because the petitioners in *Versata* had an avenue for appeal. Specifically, Plaintiff alleges that *Versata* is distinct from the case at hand, because in *Versata*, the parties appealed the PTAB's decision to *grant inter partes* review, whereas here, the parties seek to appeal a *denial* of *inter partes* review. This distinction, Plaintiff contends, meant that the plaintiffs in *Versata* would have to endure the review proceedings but at the conclusion of the proceedings would have a chance to appeal the issue of patentability to the Federal Circuit, whereas here, Plaintiff does not. In light of this, Plaintiff continues, this Court's refusal to review Plaintiff's appeal will result in Plaintiff's inability to have his claim heard at all, resulting in an unjust outcome.

However, Plaintiff's contentions lack merit for two reasons. First, Plaintiff is not completely foreclosed being heard regarding the '605 and '249 patents because, as Plaintiff noted itself, Plaintiff has a case pending in both the Northern District of California and Federal Circuit. Mem. in Supp. of Def. Mtn. to Dismiss at 9-10. Specifically the California case will allow Plaintiff to litigate the patent rights concerning both the '605 and '249 patents. *See id.* To clarify, this Court specifies that it does not have jurisdiction to review Plaintiff's appeal of the PTAB's decision to terminate *inter partes* proceedings *only*. Therefore, to the extent that

Plaintiff is barred from Article III review of anything, it is the sole issue of the PTAB's decision to terminate the instituted *inter partes* review—nothing more. Other claims that Plaintiff has pending in other courts are not currently at issue before this Court.

Second, even if Plaintiff is correct that this Court's refusal to review its appeal equates to Plaintiff being foreclosed from any Article III review, this is not an erroneous result. Article III review in this circumstance is not mandatory. As this case illustrates, there are of course, instances where Congress has precluded APA review *even when there is no alternative forum for Article III review.* Further, looking at congressional intent, courts have determined that sometimes certain plaintiffs were simply not meant to have judicial review in a particular circumstance. For example, in *Dominion* the plaintiffs appealed a PTAB decision to not institute review proceedings. The court's refusal to review the appeal left plaintiffs with no other Article III review available to appeal the PTAB decision. 2014 WL 1572061 at *1. Nevertheless, the court declined to review the appeal. *Id.* Similarly, in *Exela Pharma Sciences, LLC v. Lee*, the Federal Circuit affirmed dismissal of a plaintiff's claims on the ground that the PTO revival ruling that plaintiff sought to appeal, simply "was not subject to third party collateral challenge[s]" and therefore, "precluded review, regardless of whether [plaintiff's] claims were time-barred [or not]". 781 F.3d 1349, 1349 (Fed. Cir. 2015).

Most notably, in *St. Jude*, the Court of Appeals denied judicial review to a Plaintiff who had previously sought to institute *inter partes* review but the PTAB had decided not to institute *inter partes* proceedings. *St. Jude, 749* F.3d 1373. While refusing to review the plaintiff's case, the Court of Appeals cited §314(d), noting "the statute goes beyond merely omitting, and underscoring through its structure the omission of, a right to appeal the non-institution decision. It contains a broadly worded bar on appeal." *Id.* at 1376. These cases demonstrate that Plaintiff

is not *required* to have an Article III court review its appeal in every instance, especially not when Congress has clearly intended the contrary result—like the case at hand.[4]

Finally, Plaintiff continually reiterates that, because it has a final agency decision without an avenue for review, under §704 of the APA, it is entitled to review. However, as noted before, §701 of the very same Chapter Plaintiff relies on, explicitly carves out an exception to not only §704, but every single provision of the APA's entire Chapter 7. *See* 5 U.S.C. §701(a)(1). It notes, "chapter [seven] applies, according to the provisions thereof, *except to the extent that--*(1) *statutes preclude judicial review.*" *Id.*

### 4. The Fact That Plaintiff Shifts Its Challenge to the Standard the PTAB Uses Does Not Grant This Court Jurisdiction to Review Plaintiff's Appeal

Plaintiff's effort to challenge the standard the PTAB used in the termination decision is not sufficient to vest this Court with jurisdiction. As Defendant aptly points out, this very issue was considered and rejected in *Dominion*. *See generally Dominion*, 2014 WL 1572061 at *3. The *Dominion* court stated "[s]ection 314(d) applies to the *entirety* of the IPR (*inter partes*) decision." *Id.* This clearly encompasses the standard the PTAB used in determining whether a This language is certainly inclusive of the PTAB's application of the very threshold requirements Congress itself prescribed for every petitioner seeking *inter partes* review. In other words, the requirement that every petition requesting *inter partes* review include all RPI was created by Congress, understanding that the entity charged with evaluating such petitions would have to decline those petitions that did not conform to the requirements. Therefore, Plaintiffs challenge to the standard the PTAB applied is essentially, challenging the basis it used in determining

---

[4] Defendants also appropriately point out that it is not reasonable to assume that Congress intended §314(d) to only preclude a direct appeal to the Federal Circuit, but allowed a separate APA action to be litigated in federal district court, which, if appealed, would be appealed to the Federal Circuit. *See* Mem. in Supp. of Def. Mtn. to Dismiss, at 20 n. 10.

whether to conduct *inter partes* proceedings or not.   Put differently, Plaintiff's challenge to the standard the PTAB applied simply uses different language to challenge the very thing § 314(d) precludes—the PTAB's determination of whether to institute *inter partes* review and therefore, is precluded by § 314(d).

Alternatively, Plaintiff contests the PTAB's determination that Cardiocom, its subsidiary, was a RPI that should have been included on Medtronic's petition.   To this, the Court notes that this determination—like  the PTAB's use of the § 314's standard—is precisely the type of component that encompasses the PTAB's decision whether to institute *inter partes* proceedings. As such, that decision, made after the PTAB was fully briefed on the issue—is also final and nonappealable.

Plaintiff also states that Congress, when creating the AIA, never envisioned a petitioner being denied the opportunity to engage in *inter partes* review simply due to a technicality. However, Plaintiff is objectively mistaken.   The mere fact that Congress created threshold requirements for *every inter partes* proceeding shows that it understood that some petitioners would be denied review, when did not meet the threshold requirements.   Further, given the obvious likelihood of denials based on such technicalities, and the AIA's absence of any exception for these petitioners, allowing them to modify or appeal such a rejection, it is clear Congress did not intend for such determinations to go beyond the PTAB's decision.

## V. CONCLUSION

In light of the foregoing, it is evident that this Court lacks jurisdiction to consider Plaintiff's claim. Accordingly, **IT IS HEREBY ORDERED** that Motion to Dismiss for Lack of Subject-Matter Jurisdiction. (Doc. 11) is **GRANTED** and given this Court's dismissal of

Plaintiff's Complaint, Defendant's Motion to Dismiss Count IV for Failure to State a Claim (Doc. 12) is **DENIED as moot.**

**IT IS SO ORDERED.**

ENTERED this day of January, 2016.

Alexandria, Virginia

1/21/2016

_____ /s/

Gerald Bruce Lee
United States District Judge